**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                               )
MIRLIN S. TOOMER,              )
                               )
            Plaintiff,         )
                               )
        v.                     )  Civil Action No. 11-2216 (EGS)
                               )
JIM MATTIS,¹ in his official   )
capacity as Secretary of       )
Defense,                       )
                               )
            Defendant.         )
_____)
```

**MEMORANDUM OPINION**

This case is before the Court on plaintiff Mirlin Toomer's objections to Magistrate Judge G. Michael Harvey's Report and Recommendation ("R & R"), issued on March 24, 2016. Magistrate Judge Harvey recommends that the Court grant defendant's motion for summary judgment and deny Ms. Toomer's motion for partial summary judgment, her motion for spoliation sanctions, and her motion for a hearing on spoliation of evidence. Upon consideration of the R & R, Ms. Toomer's objections, defendant's response to those objections, the above-referenced motions, the responses and replies thereto, the relevant law, and the entire record, this Court **ADOPTS** Magistrate Judge Harvey's R & R, **GRANTS** defendant's motion for summary judgment, and **DENIES** Ms.

_____

¹ Jim Mattis has been substituted as the named defendant pursuant to Federal Rule of Civil Procedure 25(d).

Toomer's motion for partial summary judgment, her motion for spoliation sanctions, and her motion for a hearing on spoliation of evidence.[2]

## I.   Background

### A.   Federal Rule of Civil Procedure 56(e) and Local Civil Rule 7(h)

When a party moves for summary judgment, it must accompany its motion with a statement of material facts as to which it contends there is no genuine issue. LCvR 7(h)(1). That statement must reference the specific parts of the record relied on to support the assertions of fact in the statement. *Id.* In turn, the non-movant's opposition brief must be accompanied by a concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue. *Id.* That statement of genuine issues also must include specific references to the evidentiary record. *Id.* But if it "fails to properly address another party's assertion of fact . . . the court may . . . consider th[at] fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). That is, a court "may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is

---

[2] The Court also **DENIES** as moot Ms. Toomer's motion for a status hearing. *See* Mot. for Status Hr'g, ECF No. 103.

controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h)(1).

Magistrate Judge Harvey determined that Ms. Toomer's statement of genuine issues filed in response to the statement of material facts that accompanied defendant's motion for summary judgment was "replete with legal argument, argument regarding the inferences to be drawn from the facts, and assertions of other facts which [Ms. Toomer] apparently believes ought to be considered in connection with the asserted fact." R & R, ECF No. 96 at 7 (citing Pl.'s Statement of Material Facts in Dispute ("Pl.'s Resp. SMF"), ECF No. 73 ¶¶ 7-8, 14, 16, 28, 31-33, 36, 39, 41, 43, 46, 48, 51, 55-56, 59-60, 62). Accordingly, Magistrate Judge Harvey concluded that many of the assertions of fact in defendant's statement of material facts were not adequately controverted and, as a result, were undisputed. *Id.* at 4, 7. Thus, for purposes of his summary judgment analysis, he drew "from facts submitted by defendant which went undisputed or were inadequately disputed by [Ms. Toomer], the undisputed facts submitted by [Ms. Toomer] in connection with her motions, as well as the factual record submitted to the Court." *Id.* at 7. Where facts were properly disputed, he addressed those disputes as they arose in his analysis. *Id.* at 4.

Ms. Toomer objects to Magistrate Judge Harvey's characterization of the statement of genuine issues that she filed in response to defendant's statement of material facts. Obj. to Magistrate's R & R ("Pl.'s Objs."), ECF No. 99 at 5-10. This Court overrules that objection. The relevant rules make clear that, for purposes of summary judgment analysis, a court may deem undisputed assertions of fact in a movant's statement of material facts that are not properly "controverted." LCvR 7(h)(1); *see also* Fed. R. Civ. P. 56(e)(2). An assertion of fact properly presented in a movant's statement of material facts is not "controverted" when a non-movant supplies additional facts and "factual context," *see* Pl.'s Objs., ECF No. 99 at 5, that do not actually dispute the movant's asserted fact. *See Gibson v. Office of the Architect of the Capitol*, No. 00-2424, 2002 WL 32713321, at *1 n.1 (D.D.C. Nov. 19, 2002) ("Plaintiff's Statement is almost completely unhelpful to the Court as its provisions rarely address the facts outlined in Defendant's Statement, instead describing in lengthy detail the 'contextual and structural background' surrounding Defendant's stated facts."); *Learnard v. Inhabitants of the Town of Van Buren*, 182 F. Supp. 2d 115, 119-20 (D. Me. 2002) (disregarding a plaintiff's responsive factual statements in part because many of those statements "do not actually controvert the Defendants' facts that they purport to address"); *cf. Graves v. District of*

4

*Columbia*, 777 F. Supp. 2d 109, 111-12 (D.D.C. 2011) ("Where the opposing party has additional facts that are not directly relevant to its response, it must identify such facts in consecutively numbered paragraphs at the end of its responsive statement of facts."). This Court's review of defendant's statement of material facts and Ms. Toomer's statement filed in response reveals a consistent pattern of Ms. Toomer failing to controvert defendant's asserted facts and, instead, providing additional, non-responsive facts. *Compare* Def.'s Statement of Material Facts Not in Dispute ("Def.'s SMF"), ECF No. 68 ¶¶ 7-8, 14, 17, 19, 31-33, 36, 39, 43, 46-49, 51, 55-56, 60, 62, *with* Pl.'s Resp. SMF, ECF No. 73 ¶¶ 7-8, 14, 17, 19, 31-33, 36, 39, 43, 46-49, 51, 55-56, 60, 62. Accordingly, Magistrate Judge Harvey did not err in his determination of disputed and undisputed facts for purposes of the summary judgment analysis. He properly deemed undisputed those facts which the parties explicitly stated were not in dispute and those facts which the parties failed to adequately controvert, and he appropriately filled in factual gaps by scrutinizing the record submitted to the Court. *See* R & R, ECF No. 96 at 7.

**B.   Relevant Facts**

Having found no error in Magistrate Judge Harvey's determination of the undisputed facts for purposes of summary judgment analysis and overruling Ms. Toomer's objection

otherwise, this Court fully adopts Magistrate Judge Harvey's thorough recitation of the facts in his R & R and incorporates that recitation by reference here. *See id.* at 7-21.

## II.  Standards of Review

### A.   Review of Objections to Magistrate Judge's Report and Recommendation

"[A] district court may review only those issues that the parties have raised in their objections to the Magistrate Judge's report . . . ." *Taylor v. District of Columbia*, 205 F. Supp. 3d 75, 79 (D.D.C. 2016) (internal quotation marks omitted). When specific written objections have been filed with respect to a report and recommendation concerning a dispositive motion, the district court's review of the portions of the report and recommendation implicated by those objections is de novo. Fed. R. Civ. P. 72(b)(2), (3). But "[w]hen a party objects . . . to a magistrate judge's determination with respect to a non-dispositive matter, the Court must modify or set aside all or part of the magistrate judge's order if it is 'clearly erroneous' or 'contrary to law.'" *Intex Recreation Corp. v. Team Worldwide Corp.*, 42 F. Supp. 3d 80, 86 (D.D.C. 2013) (quoting Fed. R. Civ. P. 72(a)).

### B.   Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, summary judgment should be granted "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). The moving party must identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the nonmoving party must demonstrate that there is a genuine issue of material fact. *Id.* at 324. A material fact is one that is capable of affecting the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute is one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Further, in the summary judgment analysis "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

## III. Analysis

In her complaint, Ms. Toomer asserts four distinct claims: (1) racially hostile work environment; (2) retaliation; (3) racial discrimination; and (4) age discrimination. Compl., ECF No. 1 ¶¶ 48-76. Defendant filed a motion for summary judgment as to all of those claims, Def.'s Mot. for Summ. J. ("Def.'s

Mot."), ECF No. 68, and Ms. Toomer filed a motion for partial summary judgment as to the racially hostile work environment claim. Pl.'s Mot. for Partial Summ. J. and for Spoliation Sanctions ("Pl.'s Mot."), ECF No. 70. Ms. Toomer also moved for spoliation sanctions, *id.*, and later filed a motion for a hearing on the earlier-filed motion for spoliation sanctions. Pl.'s Mot. for Expedited Hr'g on Spoliation of Evid. ("Pl.'s Mot. for Hr'g"), ECF No. 92. Magistrate Judge Harvey's R & R recommends that this Court grant defendant's motion for summary judgment and deny Ms. Toomer's motion for partial summary judgment, her motion for spoliation sanctions, and her motion for a hearing.

In addition to her objection addressed above concerning the R & R's disentanglement of disputed from undisputed facts, Ms. Toomer has only objected to Magistrate Judge Harvey's R & R as it concerns her racially hostile work environment claim, Pl.'s Objs., ECF No. 99 at 10-20, 34-35, her retaliation claim, *id.* at 20-34, and her motion for spoliation sanctions. *Id.* at 36-41. The Court limits the analysis that follows to those objections, *see Taylor*, 205 F. Supp. 3d at 79 ("[T]he district court may review only those issues that the parties have raised in their objections to the Magistrate Judge's report . . . .") (internal quotation marks omitted), and, for the reasons articulated below, overrules them.

A.   **Ms. Toomer's Objections Concerning Her Racially Hostile Work Environment Claim**

To prevail on a hostile work environment claim "a plaintiff must show that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The relevant analysis has both a subjective and an objective component: The victim must subjectively perceive the environment to be abusive, and the complained about conduct must be so severe or pervasive that it objectively creates a hostile or abusive work environment. *Harris*, 510 U.S. at 21-22. "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch*, 550 F.3d at 1201 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)).

Magistrate Judge Harvey concluded that none of Ms. Toomer's proffered facts, taken alone or in combination, suffices to make out a claim of a racially hostile work environment. R & R, ECF No. 96 at 29. Thus, Magistrate Judge Harvey concluded that the

display of the action figure, supervisor Diane Stiger's comments to Ms. Toomer regarding the action figure, and certain disciplinary actions taken against Ms. Toomer do not sustain a claim of a racially hostile work environment. *Id.* Accordingly, Magistrate Judge Harvey recommends that this Court grant summary judgment to defendant as to Ms. Toomer's racially hostile work environment claim and deny Ms. Toomer's motion for partial summary judgment as to that claim.

Ms. Toomer specifically objects to Magistrate Judge Harvey's hostile work environment analysis as it concerns the display of the action figure. She argues that however one might characterize the action figure at issue in this case——*e.g.*, as a monkey, ape, monkey-ape, Bigfoot, etc.——that that action figure was a "black object with its hands held in the air" wrapped in and hanging by a rope that she saw "every time that she left [her cubicle] to use the bathroom or walked into her cubicle" sustains a hostile work environment claim. Pl.'s Objs., ECF No. 99 at 11-14. She contends that the photographic evidence in the record, which she confirmed shows how the action figure appeared to her from June 8 through June 23, 2010, *see* Dec. 2, 2013 Dep. of Mirlin Toomer ("Dec. 2, 2013 Toomer Dep."), ECF No. 68-1 at 192:4-7, standing alone "raises a specter on its face of a hostile workplace environment." Pl.'s Objs., ECF No. 99 at 14. She asserts that Magistrate Judge Harvey erred in his assessment

that the action figure display was not threatening, "especially
not in the way that an obvious noose-tied rope would be," R & R,
ECF No. 96 at 39-40, because such an assessment suggests some
"threshold standard" for determining "an African-American's
perception" of when a lynching has been depicted. Pl.'s Objs.,
ECF No. 99 at 4, 12, 14. She further contends that Magistrate
Judge Harvey engaged in semantic gymnastics to conclude that
there was merely a racially benign "doll" wrapped in "cord"
rather than a racially invidious "monkey-ape" wrapped in "rope,"
*id.* at 3-4, 13-14, 18, and she contends that Magistrate Judge
Harvey erroneously concluded that it is undisputed that the
action figure at issue is supposed to represent the mythical
creature Bigfoot rather than a monkey or an ape. *Id.* at 2, 4.
And, finally, Ms. Toomer contends that Magistrate Judge Harvey
erred in his conclusion that there was a benign explanation for
the presence of the action figure display in the workplace. *Id.*
at 18-20.

Ms. Toomer also specifically objects to Magistrate Judge
Harvey's hostile work environment analysis as it concerns Ms.
Stiger's alleged comments to Ms. Toomer in response to the
latter's complaints to the former about the action figure
display. Ms. Toomer contends that Ms. Stiger's alleged
comments——especially her question to Ms. Toomer, "[D]o you think
of yourself as a monkey?," Dec. 2, 2013 Toomer Dep., ECF No. 68-

1 at 147:17-25——sustains a hostile work environment claim. *See* Pl.'s Objs., ECF No. 99 at 15-16. She argues that Magistrate Judge Harvey erred in categorizing Ms. Stiger's comments as a non-actionable "stray remark" because those comments were "connected to an ongoing racially offensive event,"——*i.e.*, the action figure display. *Id.* Ms. Toomer contends that Ms. Stiger's comments were not merely insensitive, unresponsive, or indifferent, as Magistrate Judge Harvey characterized them, but rather were "a callous validation of an extremely offensive workplace action." *Id.* at 17.

The Court agrees with Magistrate Judge Harvey's analysis of Ms. Toomer's hostile work environment claim and therefore overrules Ms. Toomer's objections to the contrary.

### 1.   The Action Figure Display

It is undisputed that the action figure at issue in this case "was brown in color, made of hard plastic, had reticulating arms and legs, had fur engraved in the plastic and was approximately six to eight inches in length." Def.'s SMF, ECF No. 68 ¶ 21; Pl.'s Resp. SMF, ECF No. 73 at page 30. There is also no dispute that the photographs of the action figure display in the record accurately depict the action figure display as it appeared to Ms. Toomer from June 8 through June 23, 2010. Def.'s SMF, ECF No. 68 ¶ 29; Pl.'s Resp. SMF, ECF No. 73 at page 30; *see also* Compl., Attach. of Photograph, ECF No. 1

at 19; Photographs, ECF No. 68-13 at 11-14. Properly viewing the
facts in the light depicted by the photographs, *see* Pl.'s Resp.
SMF, ECF No. 73 ¶ 30 ("The [p]hoto  of the item speaks for
itself."); *cf. Armbruster v. Frost*, 962 F. Supp. 2d 105, 110
(D.D.C. 2013) (explaining that where a court has the benefit of
video evidence, it should view the facts in the light depicted
by the videotape when deciding summary judgment motions), it is
undisputed that there was a monkey-like, ape-like, or Bigfoot-
like action figure tightly wrapped——as if mummified——by a thin
white cord or rope from the action figure's ankles to its chest,
with additional strands wrapped around the action figure's neck
and arms. *See* Compl., Attach. of Photograph, ECF No. 1 at 19;
Photographs, ECF No. 68-13 at 11-14. The action figure is
hanging in the air, with the thin white cord or rope extending
upwards from the action figure's chest. *See* Compl., Attach. of
Photograph, ECF No. 1 at 19; Photographs, ECF No. 68-13 at 11-
14. Magistrate Judge Harvey got it exactly right when he
concluded that the action figure was wrapped in cord or rope "in
a manner that is not fairly described as a 'noose.'" R & R, ECF
No. 96 at 39.

Thus this case is readily distinguished from those where an
actual noose or noose-like object was part of the totality of
circumstances that gave rise to a viable racially hostile work
environment claim. *See, e.g., Tademy v. Union Pac. Corp.*, 614

F.3d 1132, 1137 & n.1, 1141, 1156 (10th Cir. 2008) (holding that a jury could believe that a life-size noose prominently suspended from a large industrial wall clock was meant to evoke a hangman's noose); *Burkes v. Holder*, 953 F. Supp. 2d 167, 178-79 (D.D.C. 2013) (Sullivan, J.) (holding that a plaintiff stated a claim of hostile work environment where the Court accepted as true the allegation that a monkey doll was hung by its neck in a noose-like fashion in a public work area of an office); *Williams v. New York City Hous. Auth.*, 154 F. Supp. 2d 820, 822-26 (S.D.N.Y. 2001) (holding that a noose displayed prominently in a supervisor's office gave rise to an actionable hostile work environment claim); *Gooden v. Timpte, Inc.*, No. 99-795, 2000 WL 34507333, at *10-11 (D. Colo. June 29, 2000) (holding that a reasonable jury could conclude that there was a racially hostile work environment when plaintiff was subjected to several statements involving racial epithets and a nude black doll was hung from a noose in his locker). This Court has said in the past——and reaffirms here——that "the noose is among the most repugnant of all racist symbols." *Burkes*, 953 F. Supp. 2d at 179 (internal quotation marks omitted). But it is undisputed that that racist symbol was not part of the action figure display that lies at the heart of Ms. Toomer's racially hostile work environment claim.

Ms. Toomer's argument otherwise is that there is no "standard" that permits a court to determine "as a matter of law" when an African-American perceives a noose. Pl.'s Objs., ECF No. 99 at 14. Thus, she contends that whether or not the white cord in this case could fairly be described as a noose, she was confronted by "a horrific and frightening image," and thus she was subjected to a hostile work environment. *Id.* But that line of reasoning ignores the objective component of the hostile work environment analysis. *See Harris*, 510 U.S. at 21 (holding that a viable hostile work environment claim requires "an environment that a *reasonable* person would find hostile or abusive") (emphasis added). A reasonable observer of the images that Ms. Toomer has confirmed show the action figure displayed as she observed it in her workplace would not describe that action figure as being hung in a noose.

Although there is no noose at issue here, the action figure is an ape- or monkey-like creature. This Court has said in the past that it is reasonable to conclude "that the use of monkey imagery is intended as a racial insult where no benign explanation for the imagery appears." *Burkes*, 953 F. Supp. 2d at 179 (internal quotation marks omitted). Here, however, there is an undisputed benign explanation for the presence of the ape- or monkey-like action figure in the workplace: Michael Shane Protka, a white male who worked in Ms. Stiger's branch, was

15

jokingly referred to by a colleague as "Bigfoot" due to his large size and full beard, and he received the action figure through a holiday gift exchange that took place in the office. Def.'s SMF, ECF No. 68 ¶¶ 20-25; Pl.'s Resp. SMF, ECF No. 73 at page 30. When Mr. Protka moved on from Ms. Stiger's branch, the action figure was left behind, and it became a source of office hijinks——for instance, it was placed in a toy Rock 'em Sock 'em Robots ring. Def.'s SMF, ECF No. 68 ¶ 26; Pl.'s Resp. SMF, ECF No. 73 at page 30. There is thus a benign explanation for the ape- or monkey-like action figure's presence in the office. Accordingly, that action figure's presence in the office did not contribute to a racially hostile work environment.

Ms. Toomer's argument to the contrary does not dispute the benign explanation for the presence of the action figure in the workplace. Instead, it focuses on the absence of a benign explanation for that action figure being wrapped in cord or rope. *See* Pl.'s Objs., ECF No. 99 at 18-20. But the action figure being wrapped in cord or rope in a manner that, as explained above, a reasonable observer would not describe as a noose, is consistent with the office hijinks of which the action figure was a part. Its mummified display appears no more nor no less invidious than its prior display in a boxing ring for toy robots.

Accordingly, Magistrate Judge Harvey correctly concluded that the action figure display, standing alone, cannot sustain a hostile work environment claim. That correct conclusion does not rest on semantic designations——*e.g.*, whether the action figure was a "doll" or an "ape" or a "monkey" and whether it was wrapped in "cord" or "rope"——but rather rests on an assessment of the undisputed record evidence, particularly the photographic evidence. And, contrary to Ms. Toomer's suggestions, *see* Pl.'s Objs., ECF No. 99 at 2, 4, 10, it is not material whether or not the action figure was originally purchased in packaging bearing the designation "Bigfoot." Even if the action figure came in packaging emblazoned with the designation "Monkey," there is no dispute that the action figure was intended as a humorous gift for a white employee who was jokingly referred to as "Bigfoot." Def.'s SMF, ECF No. 68 ¶¶ 20-25; Pl.'s Resp. SMF, ECF No. 73 at page 30. Thus the action figure display, standing alone, does not sustain a racially hostile work environment claim.

### 2.  Ms. Stiger's Comments

Magistrate Judge Harvey also correctly concluded that Ms. Stiger's comments to Ms. Toomer in response to the latter's complaints about the action figure display also are not sufficient to sustain a viable racially hostile work environment claim. Ms. Toomer alleges that on June 8, 2010 she went to Ms. Stiger to complain about the action figure display that she

found offensive. Dec. 2, 2013 Toomer Dep., ECF No. 68-1 at
128:20-22. Ms. Stiger purportedly responded by laughing and by
telling Ms. Toomer that she did not find the action figure
display offensive and that the action figure was an ape, not a
monkey. *Id.* at 146:4-147:14. Ms. Stiger also allegedly asked Ms.
Toomer, "[D]o you think of yourself as a monkey?" *Id.* at 147:19-
23. Assuming Ms. Stiger responded to Ms. Toomer's complaint in
the manner that Ms. Toomer alleges——Ms. Stiger denies having
made the comments, Dep. of Diane Stiger ("Stiger Dep."), ECF No.
68-3 at 133:7-16——as a matter of law there still was no hostile
work environment.

To prevail on her racially hostile work environment claim,
Ms. Toomer must show that she was subject to discriminatory
intimidation, ridicule, and insult that was "sufficiently severe
or pervasive to alter the conditions of [her] employment and
create an abusive working environment." *See Harris*, 510 U.S. at
21. A reasonable jury could certainly conclude that asking an
African-American person, "Do you think of yourself as a monkey?"
when that person is complaining about an ape- or monkey-like
action figure displayed in the workplace is insensitive and
offensive. Even so, that offensive question is not *sufficiently*
severe to constitute a racially hostile work environment. In
*Ayissi-Etoh*, the D.C. Circuit suggested, without holding, that
"the use of an *unambiguously* racial epithet such as 'nigger' by

18

a supervisor" could alone be sufficient to establish a hostile work environment. *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013) (emphasis added) (some internal quotation marks omitted); *see also id.* at 580 (Kavanaugh, J., concurring) ("[B]eing called the n-word by a supervisor——as Ayissi-Etoh alleges happened to him——suffices by itself to establish a racially hostile work environment."). But the severity of a supervisor's use of "probably the most offensive word in English," *id.* (Kavanaugh, J., concurring) (internal quotation marks omitted), is far greater than a somewhat bizarre and ambiguous, albeit offensive, question allegedly posed by a supervisor in response to a complaint about an unambiguously non-racial workplace display. Rather, Ms. Stiger's offensive question is more akin to the sort of derogatory remarks that courts in this Circuit have deemed non-actionable in the past. *See, e.g.*, *Freedman v. MCI Telecomms. Corp.*, 255 F.3d 840, 848 (D.C. Cir. 2001) (holding that there was no hostile work environment where a supervisor, after negotiating with another supervisor for a printer, told a Jewish employee, "Soon I'm going to be the only one at this terminal wearing a Yarmulka"); *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1513 (D.C. Cir. 1995) (holding that a supervisor's use of the term "bitch" in a written evaluation, when viewed in context, was "possibly inappropriately phrased" but "not . . . conclusive of

sex discrimination"); *Caldwell v. ServiceMaster Corp.*, 966 F. Supp. 33, 51 (D.D.C. 1997) (holding that a supervisor's remarks to an African-American employee——calling her "girl," "gal," "rascal," and "you people"——were "race-related" but lacking the "racial animus that is so severe and pervasive as to create a hostile environment"). Thus Ms. Stiger's comments were not sufficiently severe to sustain a hostile work environment claim.

As concerns pervasiveness, *see Ayissi-Etoh*, 712 F.3d at 579 (Kavanaugh, J., concurring) ("The test set forth by the Supreme Court is whether the alleged conduct is 'sufficiently severe *or* pervasive'——written in the disjunctive . . . ."), Ms. Toomer has not pointed to a sufficiently pervasive pattern of racially hostile conduct. Ms. Stiger's "singular stray comment does not a hostile environment make." *See Freedman*, 255 F.3d at 848. Ms. Toomer contends that Ms. Stiger's comment was not a mere stray remark because it was "connected to [the] ongoing racially offensive event" of the action figure display and Ms. Toomer's complaints about that display. Pl.'s Objs., ECF No. 99 at 15-17. But, as explained above, a reasonable observer would not view the action figure display as a "racially offensive event," so Ms. Stiger's comment——"Do you think of yourself as a monkey?"—— was not "part of a pervasive *pattern* of hostility and ridicule" that is necessary to sustain a hostile work environment claim on pervasiveness grounds. *See Dickerson v. SecTek, Inc.*, 238 F.

Supp. 2d 66, 83-85 (D.D.C. 2002) (emphasis added) (holding that female security guards had asserted viable hostile work environment claims when their male supervisor regularly threatened them, yelled at them, called them "chick," used the word "bitch" in their presence, discussed trips to strip clubs with male co-workers in the workplace, and stated that "[w]omen don't belong in security"). Ms. Toomer also suggests that Ms. Stiger's failure to remove the action figure after Ms. Toomer allegedly voiced her complaints about it contributed to the pervasiveness of the hostile work environment. *See* Pl.'s Objs., ECF No. 99 at 16-17. But Ms. Stiger cannot be said to have contributed to a racially hostile work environment by not removing a display that, as explained above, was devoid of a racially invidious connotation.

The Court thus overrules Ms. Toomer's specific objections to Magistrate Judge Harvey's analysis of her racially hostile work environment claim. Accordingly, defendant's motion for summary judgment as to that claim is **GRANTED**, and Ms. Toomer's motion for partial summary judgment as to that claim is **DENIED**.

### B.   Ms. Toomer's Objections Concerning Her Retaliation Claim

"Both Title VII and the ADEA prohibit the federal government from retaliating against employees who complain of employment discrimination." *Jones v. Bernanke*, 557 F.3d 670, 677

21

(D.C. Cir. 2009). A retaliation claim is subject to the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Walker v. Johnson*, 798 F.3d 1085, 1091 (D.C. Cir. 2015). "Under that framework, a plaintiff must first establish a prima facie case of retaliation by showing (1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two." *Jones*, 557 F.3d at 677.

If a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its actions. *Id.* "If the employer does so, the burden-shifting framework disappears, and a court reviewing summary judgment looks to whether a reasonable jury could infer . . . retaliation from all the evidence . . . ." *Id.* (internal quotation marks omitted). Thus the central question reduces to whether the plaintiff has produced sufficient evidence for a reasonable jury to find that the employer's asserted non-retaliatory reason was not the actual reason for its adverse action and that the employer intentionally retaliated against the plaintiff. *Walker*, 798 F.3d at 1092. To support an inference that the employer's stated reasons were pretextual and that its real reasons were prohibited retaliation, a plaintiff can cite "the employer's better treatment of similarly situated employees outside the

plaintiff's protected group, its inconsistent or dishonest explanations, its deviation from established procedures or criteria, or the employer's pattern of poor treatment of other employees in the same protected group as the plaintiff, or other relevant evidence that a jury could reasonably conclude evinces an illicit motive." *Id.*

Even after the employer articulates a legitimate, non-retaliatory reason for its action and, consequently, the plaintiff's prima facie case "drops out of the picture," *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 493-94 (D.C. Cir. 2008) (internal quotation marks omitted), a court "still first must determine whether [a] plaintiff has suffered an adverse employment action." *Adesalu v. Copps*, 606 F. Supp. 2d 97, 103 (D.D.C. 2009); *see also Taylor v. Solis*, 571 F.3d 1313, 1320 n.* (D.C. Cir. 2009) ("The court can resolve [the question of retaliation vel non] in favor of the employer based either upon the employee's failure to rebut its explanation or upon the employee's failure to prove an element of her case——here that her employer took a materially adverse action against her."). "'Adverse actions' in the retaliation context encompass a broader sweep of actions than those in a pure discrimination claim." *Baloch*, 550 F.3d at 1198 n.4. Such actions are those that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe*

*Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted).

The D.C. Circuit has also recognized "a special type of retaliation claim based on a 'hostile work environment.'" *Baird v. Gotbaum*, 792 F.3d 166, 168 (D.C. Cir. 2015). A retaliatory hostile work environment claim "consists of several individual acts that may not be actionable on their own but become actionable due to their cumulative effect." *Id.* (internal quotation marks and alteration omitted). The relevant acts must be "adequately linked such that they form a coherent hostile environment claim." *Id.* (internal quotation marks omitted). "In addition, the acts must be of such severity or pervasiveness as to alter the conditions of . . . employment and create an abusive working environment." *Id.* at 169 (internal quotation marks omitted). As in the racially hostile work environment context, severity and pervasiveness are assessed by looking to the totality of the circumstances. *Id.*

Magistrate Judge Harvey concluded that Ms. Toomer was unable to prevail on her retaliation claim because, whether considered as discrete retaliatory actions or collectively, each allegedly retaliatory incident about which she complains "either does not rise to the level of a materially adverse action or is justified by legitimate, non-discriminatory reasons which [Ms. Toomer] has not shown to be pretext for retaliation." R & R, ECF

No. 96 at 46. Accordingly, Magistrate Judge Harvey recommends that this Court grant summary judgment to defendant as to Ms. Toomer's retaliation claim.

Ms. Toomer objects to various aspects of Magistrate Judge Harvey's analysis of her retaliation claim. She contends that in his analysis of her retaliation claim Magistrate Judge Harvey should have considered her allegations that Mark Dial, the deputy director of her office, verbally assaulted her on September 9, 2010 and that Tom Guercio, a human resources representative, physically assaulted her on September 22, 2010. Pl.'s Objs., ECF No. 99 at 21. She also contends that Magistrate Judge Harvey erred in his analysis of five other retaliatory incidents that he did address, arguing that he erroneously concluded that certain actions were not materially adverse actions and that she failed to rebut as pretext defendant's proffered non-retaliatory reasons for certain actions. *Id.* at 22-34. And she contends that Magistrate Judge Harvey did not adequately address her retaliatory hostile work environment theory, as she asserts that his analysis considered the alleged retaliatory incidents in isolation instead of assessing them as part of an "ongoing and continuous" pattern of retaliation. *Id.* at 21-22.

Ms. Toomer's objections are without merit and, accordingly, are overruled.

### 1.   Mr. Dial's Verbal Assault and Mr. Guercio's Physical Assault

As concerns her first specific objection, the Court overrules that objection because even if Magistrate Judge Harvey erred when he failed to consider Mr. Dial's alleged verbal assault and Mr. Guercio's alleged physical assault in the context of Ms. Toomer's retaliation claim, *see* R & R, ECF No. 96 at 45 n.14, neither of those incidents is sufficient to sustain a retaliation claim. On the morning of September 9, 2010 when Ms. Toomer was inadvertently emailed Privacy Act-protected materials, Mr. Dial ordered Ms. Toomer to report to his office. Dec. 12, 2013 Dep. of Mirlin Toomer ("Dec. 12, 2013 Toomer Dep."), ECF No. 68-2 at 42:4-16; Def.'s SMF, ECF No. 68 ¶¶ 43-49; Pl.'s Resp. SMF, ECF No. 73 ¶¶ 43, 46-49 and at page 30. When she did so, he allegedly yelled at her to shut the door and sit down, threatened to terminate her employment, and pounded his fists on a table. Dec. 12, 2013 Toomer Dep., ECF No. 68-2 at 42:17-45:22; Pl.'s Corrected Opp. to Def.'s Mot. for Summ. J. ("Pl.'s Opp."), ECF No. 73 at 5. This conduct standing alone cannot sustain a retaliation claim because "merely being yelled at by your supervisor does not rise to the level of an adverse employment action." *Moore v. Ashcroft*, 401 F. Supp. 2d 1, 26 (D.D.C. 2005) (internal quotation marks omitted); *see also Baloch*, 550 F.3d at 1199 ("[S]poradic verbal altercations or

26

disagreements do not qualify as adverse actions for purposes of retaliation claims.").

Even if Mr. Dial's yelling and table pounding did constitute a materially adverse employment action, Ms. Toomer's retaliation claim based on that conduct still fails because she has not rebutted as pretext his non-retaliatory reason for engaging in such conduct: Her undisputed refusal to delete her electronic copies and destroy or return her paper copies of the Privacy Act-protected materials inadvertently emailed to her despite being ordered by Mr. Dial and others to do so. *See* Sept. 9, 2010 Email from Mirlin Toomer to Mark Dial, ECF No. 68-12 at 6 (email from Ms. Toomer stating that she told Mr. Dial that she "could not" delete the Privacy Act-protected materials despite being ordered to do so); Def.'s SMF, ECF No. 68 ¶ 46; Pl.'s Resp. SMF, ECF No. 73 ¶ 46. For the same reason, Mr. Guercio's alleged physical assault against Ms. Toomer on September 22, 2010, *see* Dec. 12, 2013 Toomer Dep., ECF No. 68-2 at 80:1-9, does not sustain a viable retaliation claim: Ms. Toomer has not produced evidence sufficient to permit a reasonable jury to conclude that Mr. Guercio grabbed her arm for any reason other than because she refused to participate in a meeting with him and Mr. Dial concerning the Privacy Act breach. *See* Decl. of Mark Dial, ECF No. 68-12 ¶ 17.

### 2.   Ms. Stiger's Alleged Threat

Ms. Toomer contends that Magistrate Judge Harvey erred when he concluded that her self-serving allegations regarding an alleged threat rendered by Ms. Stiger in response to her complaints about harassment by a co-worker do not raise a triable issue of fact. *See* Pl.'s Objs., ECF No. 99 at 22-23. Ms. Toomer alleges that she was harassed by a co-worker and when she complained to Ms. Stiger about the harassment, Ms. Stiger said, "If anything happens to [Ms. Toomer's co-worker], I'm going to make sure it happens to you." Dec. 2, 2013 Toomer Dep., ECF No. 73-5 at 74:1-20. Ms. Toomer contends that she eventually withdrew her complaint about her co-worker's harassment because of this threat and because Ms. Stiger ordered her to attend a "Respect in the Workplace" training session. Pl.'s Objs., ECF No. 99 at 23.

The Court agrees with Magistrate Judge Harvey that Ms. Toomer offers no evidence of Ms. Stiger's threat other than her own self-serving assertions and that such unsupported, self-serving assertions do not give rise to a triable issue of fact. *See, e.g.*, *Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997) (when scrutinizing motions for summary judgment courts "examine the facts in the record and reasonable inferences in the light most favorable to the nonmoving party, but do not accept bare conclusory allegations as fact") (internal citations omitted);

*Ward v. District of Columbia*, 950 F. Supp. 2d 9, 17 (D.D.C. 2013) ("[S]elf-serving assertions are not sufficient to create an issue of material fact."); *Musgrove v. Gov't of the District of Columbia*, 775 F. Supp. 2d 158, 170 (D.D.C. 2011) (holding that self-serving deposition testimony, standing alone, is insufficient to survive a motion for summary judgment). Even if unsupported, self-serving assertions were sufficient to surmount summary judgment, Ms. Toomer's own deposition testimony contradicts her assertions elsewhere that she withdrew her complaint concerning her co-worker's harassment because Ms. Stiger threatened her. *See* Dec. 2, 2013 Toomer Dep., ECF No. 68-1 at 80:1-82:4 (Ms. Toomer explaining that "what made [her] withdraw the complaint" was a conversation with another supervisor regarding her co-worker's youth and immaturity and the need for Ms. Toomer to give that co-worker a second chance). Such contradictory testimony belies the conclusion that there is a triable issue of fact here. *See Pina v. Children's Place*, 740 F.3d 785, 799 (1st Cir. 2014) (holding that summary judgment was appropriate where plaintiff's admissions in her deposition undermined her claims); *Washington, Marlboro & Annapolis Motor Lines v. Maske*, 190 F.2d 621, 621-22 (D.C. Cir. 1951) (reversing a judgment in a plaintiff's favor because it was supported only by her self-serving testimony which was undermined by proof of

her earlier statement that the opposite of that testimony was true).

### 3.   Reprimand Due to a Disruptive Phone Call

Ms. Toomer contends that Magistrate Judge Harvey erred when he concluded that she does not have a viable retaliation claim based on her being reprimanded for having made a disruptive phone call to the Equal Employment Opportunity ("EEO") office while she was in the workplace. Pl.'s Objs., ECF No. 99 at 23-25. But Magistrate Judge Harvey's conclusion as to this claim rested on two independent grounds——(1) that Ms. Toomer's receipt of a letter of reprimand issued in part due to her disruptive phone call was "not a materially adverse employment action under the standard applicable to retaliation claims" and (2) that Ms. Toomer fails to rebut defendant's non-retaliatory reasons for reprimanding her as pretext, R & R, ECF No. 96 at 48——and Ms. Toomer's objections to the R & R fail to address the first of those two grounds. *See* Pl.'s Objs., ECF No. 99 at 23-25, 27-28. Having failed to object to Magistrate Judge Harvey's conclusion that being issued a letter of reprimand was not a materially adverse employment action, Ms. Toomer has waived review of that conclusion in this Court. *See Taylor*, 205 F. Supp. 3d at 79 ("[T]he district court may review only those issues that the parties have raised in their objections to the Magistrate Judge's report . . . .") (internal quotation marks omitted).

Even if Ms. Toomer had properly lodged a specific objection, such an objection would be overruled. *See, e.g.*, *Baloch*, 550 F.3d at 1199 (holding that issuing a letter of counseling and a letter of reprimand was not a materially adverse employment action for purposes of a retaliation claim because the letter "contained no abusive language" and, instead, contained "job-related constructive criticism, which can prompt an employee to improve her performance") (internal quotation marks omitted); *Hyson v. Architect of the Capitol*, 802 F. Supp. 2d 84, 102 (D.D.C. 2011) ("A letter of counseling, written reprimand, or unsatisfactory performance review, if not abusive in tone or language or a predicate for a more tangible form of adverse action, will rarely constitute materially adverse action under Title VII.").

Additionally, the specific objection that Ms. Toomer has properly presented to this Court——objecting to Magistrate Judge Harvey's conclusion that she failed to produce sufficient evidence to rebut as pretext defendant's stated non-retaliatory reason for reprimanding her——is without merit. Ms. Toomer contends that Magistrate Judge Harvey erred because Ms. Stiger, who issued the letter of reprimand, testified that she had only been informed of the allegedly loud and disruptive phone call by Ms. Toomer's co-workers and, according to Ms. Toomer, that testimony is inadmissible hearsay. Pl.'s Objs., ECF No. 99 at

31

23-25. But that testimony is not inadmissible hearsay because
the statements of Ms. Toomer's co-workers are not being offered
for their truth; rather, they are only being offered to show the
effect they had on Ms. Stiger's decision-making as a supervisor.
*See Moore v. Hartman*, 102 F. Supp. 3d 35, 147 (D.D.C. 2015)
("[O]ut-of-court statements may be admissible when offered not
for the truth of the matter asserted but to show the effect on
the state of mind of the listener."). Whether or not Ms. Toomer
made a loud and disruptive phone call to the EEO office from her
workspace, Ms. Stiger honestly and reasonably believed that such
a disruptive phone call was made, and Ms. Toomer has "not
produce[d] evidence sufficient to show that [Ms. Stiger's]
conclusion was dishonest or unreasonable." *Brady*, 520 F.3d at
496. Additionally, Ms. Toomer has not produced sufficient
evidence to rebut Ms. Stiger's contention that it was the loud
and disruptive nature of the call——not the fact that the call
was made to the EEO office——that undergirded her decision to
reprimand Ms. Toomer. *See* Stiger Dep., ECF No. 68-3 at 156:16-18
("It wasn't the fact that she was calling EEO. It was the fact
that she was making a disruptive phone call in the workplace.").
Accordingly, Ms. Toomer does not have a viable retaliation claim
based on being reprimanded for having made a disruptive phone
call to the EEO office.

4.    "Respect in the Workplace" Session and Suspension

Ms. Toomer contends that Magistrate Judge Harvey erred when he concluded that she failed to rebut as pretext defendant's non-retaliatory reasons for ordering her to attend a "Respect in the Workplace" training session and suspending her from work for one day for failing to attend that session. Pl.'s Objs., ECF No. 99 at 25-27. This objection is also without merit. Ms. Stiger ordered Ms. Toomer to attend the same "Respect in the Workplace" training session as the co-worker who allegedly harassed her because Ms. Stiger's assessment was that, while Ms. Toomer's co-worker had engaged in some inappropriate and unacceptable workplace conduct, Ms. Toomer was "feeding the repartee" with that co-worker. Stiger Dep., ECF No. 68-3 at 93:20-94:15. Ms. Toomer contends that Ms. Stiger's stated rationale for her action is pretextual, as it is consistent with her alleged threat to punish Ms. Toomer in the same manner that she would punish the harassing co-worker. Pl.'s Objs., ECF No. 99 at 26. But undisputed record evidence confirms that Ms. Toomer *did* engage in the sort of repartee with her co-worker that would likely lead to further words and conduct inappropriate for the workplace. *See* Email from Mirlin Toomer to Matthew Esteves, ECF No. 68-11 at 6 (Ms. Toomer referring to her co-worker as "Pumpkin" and telling him, "If you continue to ignore me then I am going to come over there an[d] smooch you until you

33

acknowledge me!"). Accordingly, Ms. Toomer has not produced sufficient evidence for a reasonable jury to find that defendant's stated reason for ordering Ms. Toomer to attend the "Respect in the Workplace" training session and for subsequently suspending her for one day due to her failure to attend that session was not its actual reason.

### 5. Negative Performance Review and Letter of Reprimand

Ms. Toomer appears to object to Magistrate Judge Harvey's conclusion that she cannot prevail on a retaliation claim based on Ms. Stiger issuing to her a negative performance review and the letter of reprimand referred to above. Pl.'s Objs., ECF No. 99 at 27-28. This apparent objection fails at the outset because it is devoid of any specificity and, consequently, waived. *See id.* (calling Magistrate Judge Harvey's conclusion concerning the negative performance review and the letter of reprimand "astounding" but then merely restating various of Ms. Toomer's retaliation-related grievances and baldly asserting that the retaliation continued after Ms. Toomer was transferred out of Ms. Stiger's branch); *Taylor*, 205 F. Supp. 3d at 79 ("[T]he district court may review only those issues that the parties have raised in their objections to the Magistrate Judge's report . . . .") (internal quotation marks omitted).

Even assuming that Ms. Toomer has adequately articulated a specific objection to Magistrate Judge Harvey's analysis as concerns these allegedly retaliatory incidents, this Court again finds no error in the Magistrate Judge's analysis. As explained above, issuance of the letter of reprimand was not a materially adverse employment action. Similarly, issuance of the negative performance review to Ms. Toomer also was not a materially adverse action because Ms. Toomer has nowhere linked that negative review to financial harms or other negative tangible job consequences nor has she alleged that it contained abusive language. *See, e.g.*, *Baloch*, 550 F.3d at 1199 ("[P]erformance reviews typically constitute adverse actions only when attached to financial harms."); *Durant v. District of Columbia*, 932 F. Supp. 2d 53, 69 (D.D.C. 2013) ("In this circuit, evaluations and written warnings do not constitute materially adverse actions unless they have tangible job consequences.") (internal quotation marks omitted); *Hyson*, 802 F. Supp. 2d at 102 ("A letter of counseling, written reprimand, or unsatisfactory performance review, if not abusive in tone or language or a predicate for a more tangible form of adverse action, will rarely constitute materially adverse action under Title VII.").

And, additionally, Ms. Toomer has again failed to rebut defendant's legitimate, non-retaliatory reasons for its actions as pretext. The letter of reprimand was grounded in part, as

explained above, in Ms. Stiger's reasonable belief that Ms.
Toomer had had a disruptive workplace phone call and in part in
Ms. Stiger's reasonable belief that Ms. Toomer had failed to
comply with the agency's sick-leave policy. *See* June 17, 2010
Letter of Reprimand, ECF No. 68-13 at 7-8. Ms. Toomer does refer
to a co-worker who, based on overheard workplace conversations
and a later conversation between Ms. Toomer and the co-worker,
allegedly was not reprimanded or otherwise punished for
violating the sick-leave policy. Dec. 2, 2013 Toomer Dep., ECF
No. 68-1 at 168:2-170:13. But that co-worker was an "astute
employee" who regularly complied with the workplace rules,
Stiger Dep., ECF No. 68-3 at 163:18-164:16, whereas Ms. Toomer
was cited in her letter of reprimand for two infractions
occurring in quick succession and was reminded in that letter
that she had been "counseled several times on the established
leave procedure." *See* June 17, 2010 Letter of Reprimand, ECF No.
68-13 at 7-8. Accordingly, because Ms. Toomer has not identified
a similarly-situated comparator, an inference of falsity as to
defendant's proffered reason for issuing its letter of reprimand
to her is unwarranted. *See Dudley v. WMATA*, 924 F. Supp. 2d 141,
162 (D.D.C. 2013) ("When relying on a comparator to overcome the
employer's proffered legitimate explanation, there must be a
very close relationship between the compared employees."). And
as concerns the negative performance review, that review was

already in the works before Ms. Toomer engaged in any protected activity. *See* Email from Diane Stiger to Selina Pendleton, ECF No. 76-2 at 7. Accordingly, no reasonable jury could conclude that Ms. Stiger eventually issued it because Ms. Toomer engaged in protected activity. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) ("[P]roceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality.").

### 6.   Termination

Ms. Toomer objects to Magistrate Judge Harvey's conclusion that she has failed to rebut defendant's proffered legitimate, non-retaliatory reason for terminating her employment. Pl.'s Objs., ECF No. 99 at 28-34. Once again, the Court agrees with Magistrate Judge Harvey's conclusion and overrules this objection.

David White, the deciding official for Ms. Toomer's termination decision, has explained that he terminated Ms. Toomer not because she engaged in protected activity but rather because she repeatedly refused to delete Privacy Act-protected materials that had been inadvertently emailed to her and refused to destroy or return the hard copies of those materials that she had printed. Dep. of David White ("White Dep."), ECF No. 81-1 at 79:17-80:6, 93:9-12, 98:11-15. Ms. Toomer contends that this non-retaliatory reason is pretext because the evidentiary record

37

does not make clear "that she was non-cooperative or
insubordinate in the return" of the Privacy Act-protected
materials. Pl.'s Objs., ECF No. 99 at 30. Ms. Toomer points to a
series of events between September 14 and September 20, 2010
intended to support that contention. *Id.* at 29-30. Her ultimate
aim seems to be to demonstrate pretext by showing that defendant
is lying about the insubordination proffered as its reason for
her termination. *See Walker*, 798 F.3d at 1093 ("[I]f the only
reason an employer offers for firing an employee is a lie, the
inference that the real reason was a forbidden one . . . may
rationally be drawn.") (internal quotation marks and some
alterations omitted). Ms. Toomer falls well short of
demonstrating any lie. It is undisputed that Ms. Toomer was
ordered to delete electronic copies and destroy paper copies of
the Privacy Act-protected materials almost immediately after
they were inadvertently sent to her, but she refused to do so.
*See* Sept. 9, 2010 Email from Mirlin Toomer to Mark Dial, ECF No.
68-12 at 6 (email from Ms. Toomer stating that she told Mr. Dial
that she "could not" delete the Privacy Act-protected materials
despite being ordered to do so); Def.'s SMF, ECF No. 68 ¶¶ 45-
46; Pl.'s Resp. SMF, ECF No. 73 ¶ 46. When Ms. Toomer eventually
mailed documents to the agency on September 20, the agency's
analysis of those documents indicated that the paper and ink
were different from that used when Ms. Toomer originally printed

the documents, strongly suggesting that Ms. Toomer remained non-compliant after more than a week of being repeatedly told to delete electronic copies of and return or destroy hard copies of the Privacy Act-protected materials. Email from Charlotte Owen to Mark Dial, ECF No. 68-12 at 14; Def.'s SMF, ECF No. 68 ¶ 60; Pl.'s Resp. SMF, ECF No. 73 ¶ 60. Ms. Toomer has thus not "demonstrate[d] that [her] employer is making up or lying about the underlying facts" of her insubordination. *See Brady*, 520 F.3d at 495.[3]

Ms. Toomer also argues that defendant's stated reason for firing her was pretextual because Mr. Dial and Mr. Guercio participated in the termination process. Pl.'s Objs., ECF No. 99 at 30-34. She contends that although Mr. White made the final decision to terminate her, Mr. Dial and Mr. Guercio were "integral parts of the decision making process" and thus influenced Mr. White's decision. *Id.* at 32. Ms. Toomer contends that that alleged influence is sufficient to demonstrate pretext because Mr. Dial and Mr. Guercio harbored retaliatory animus

---

[3] For this same reason, Ms. Toomer's allegations that Mr. White did not consider her "past disciplinary record, past work record, potential for rehabilitation, mitigating circumstances and availability of alternative sanctions" when deciding to terminate her employment are unavailing. *See* Pl.'s Objs., ECF No. 99 at 33-34. Even assuming Mr. White failed to consider these factors in his decision, that still would not be enough to rebut his proffered legitimate reason for her termination——her insubordination concerning the Privacy Act-protected materials—— as pretext.

against her. *See id.* at 30-31. That retaliatory animus allegedly stemmed from Ms. Toomer having filed an EEO complaint implicating Mr. Dial on September 13, 2010 and from a pending criminal investigation as to Mr. Guercio based on his altercation with Ms. Toomer in Mr. Dial's office on September 22, 2010. *See id.* Ms. Toomer thus advances a "cat's-paw theory" where "a formal decision maker may be an unwitting conduit of another actor's illicit motives." *Walker*, 798 F.3d at 1095 (citing *Griffin v. Wash. Convention Ctr.*, 142 F.3d 1308, 1311-12 (D.C. Cir. 1998)). She can prevail on such a theory only "'if [1] a supervisor performs an act motivated by [retaliatory] animus, [2] that is intended by the supervisor to cause an adverse employment action, and . . . [3] that act is a proximate cause of the ultimate employment action.'" *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 297 (D.C. Cir. 2015) (quoting *Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011)).

It is undisputed that Mr. Dial and Mr. Guercio participated in the termination process in some capacity. *See, e.g.*, White Dep., ECF No. 81-1 at 66:12-20. Even assuming that they were "integral" to that process, *see* Pl.'s Objs., ECF No. 99 at 32-33, Ms. Toomer fails to satisfy the first step in the cat's-paw analysis: demonstrating that they were motivated by retaliatory animus. Ms. Toomer has pointed out that she filed an EEO complaint on September 13, 2010 that referred to the threats Mr.

40

Dial allegedly made against her on September 9, 2010 after she refused to delete the Privacy Act-protected materials, and she has pointed out that Mr. Guercio was subject to police investigation based on her allegation that he assaulted her during the course of a September 22, 2010 meeting related to the Privacy Act breach. *See* Pl.'s Objs., ECF No. 99 at 30. Even so, Ms. Toomer has not produced any evidence that would permit a reasonable jury to find that Mr. Dial and Mr. Guercio wanted to terminate her employment *because of* those incidents. In the absence of sufficient evidence to suggest that they harbored retaliatory animus, the Court has no need to proceed to the second and third steps of the cat's-paw analysis. *See Burley*, 801 F.3d at 297.

### 7. Retaliatory Hostile Work Environment

Finally, the Court overrules Ms. Toomer's objection that Magistrate Judge Harvey erroneously rejected her retaliatory hostile work environment claim. *See* Pl.'s Objs., ECF No. 99 at 21-22. It certainly can be the case that "several individual acts that may not be actionable on [their] own . . . become actionable due to their cumulative effect." *Baird*, 792 F.3d at 168 (internal quotation marks omitted). That being said, it can also be the case that even when a plaintiff "accumulate[s] a long list of slights" a court might not be able to "discern a collective retaliation claim greater than the sum of its parts."

*Lurensky v. Wellinghoff*, 167 F. Supp. 3d 1, 21 (D.D.C. 2016) (internal quotation marks omitted). This case falls into the latter of those two categories. As explained above, each of the allegedly retaliatory incidents about which Ms. Toomer complains either does not constitute a materially adverse employment action or is readily justified by a non-retaliatory explanation that Ms. Toomer fails to rebut as pretext. The Court does not see how bundling these various alleged grievances together crosses the threshold for a retaliatory hostile work environment claim, particularly given that Ms. Toomer's complaints involve "different people doing different things in different contexts," *see Baird*, 792 F.3d at 171, and, additionally, in view of the requirement that the complained of acts "must be of such severity or pervasiveness as to alter the conditions of . . . employment and create an abusive working environment." *Id.* at 169 (internal quotation marks omitted). Accordingly, Magistrate Judge Harvey correctly concluded that Ms. Toomer does not have a viable retaliatory hostile work environment claim.

In sum, the Court overrules Ms. Toomer's specific objections to Magistrate Judge Harvey's analysis of her retaliation claim. Accordingly, summary judgment for defendant as to that claim is **GRANTED**.

   **C.   Ms. Toomer's Objections Concerning Her Motion for
         Spoliation Sanctions and Her Motion for a Hearing**

Ms. Toomer also objects to Magistrate Judge Harvey's
recommendation that this Court deny her motion for spoliation
sanctions against the defendant and deny her motion for a
hearing on her motion for spoliation sanctions. *See* Pl.'s Objs.,
ECF No. 99 at 36-41. This objection is meritless and thus
overruled.

First, the primary piece of evidence that is the subject of
Ms. Toomer's motion for spoliation sanctions——the action
figure——was found by defendant during the course of this
litigation. *See* Notice, ECF No. 90. Because that evidence has
been located and presented to Ms. Toomer for inspection,
spoliation sanctions are unwarranted. *See McGuire v. Acufex
Microsurgical, Inc.*, 175 F.R.D. 149, 156-57 (D. Mass. 1997)
(holding that there was no prejudice to a plaintiff and thus no
basis for sanctions when evidence believed to be lost was found
and promptly turned over to the plaintiff). And because it is
clear that the recently recovered action figure is the same
action figure as that depicted in the photographs showing the
action figure as it was displayed to Ms. Toomer between June 8
and June 23, 2010, *compare* Photographs, ECF No. 68-13 at 11-14,
*with* Photograph, ECF No. 91-1 at 3, there is no need to conduct
an evidentiary hearing to "verify" the "identity" of the

recently recovered action figure. *See* Pl.'s Objs., ECF No. 99 at 41.

Second, it is undisputed that photographic evidence in the record shows how the action figure was displayed to Ms. Toomer between June 8 and June 23, 2010. Def.'s SMF, ECF No. 68 ¶ 29; Pl.'s Resp. SMF, ECF No. 73 at page 30. As explained above, *see supra* Part III.A, it is that undisputed photographic evidence that entitles defendant to summary judgment as to Ms. Toomer's racially hostile work environment claim and, accordingly, spoliation sanctions are unwarranted. *See Grosdidier v. Broad. Bd. Of Governors, Chairman*, 709 F.3d 19, 28-29 (D.C. Cir. 2013) (holding that even if the plaintiff were given a favorable inference because of spoliation, "other evidence" in the record prevented the plaintiff from surmounting summary judgment). Accordingly, Ms. Toomer's motion for spoliation sanctions and her motion for a hearing on spoliation of evidence are **DENIED**.

## IV. Conclusion

For the foregoing reasons, Ms. Toomer's objections to Magistrate Judge Harvey's R & R are overruled, and Magistrate Judge Harvey's R & R is **ADOPTED** in its entirety. Accordingly, the Court **GRANTS** defendant's motion for summary judgment and **DENIES** Ms. Toomer's motion for partial summary judgment, her motion for spoliation sanctions, and her motion for a hearing on

spoliation of evidence. A separate Order accompanies this

Memorandum Opinion.

   **SO ORDERED.**

**Signed:      Emmet G. Sullivan**
**              United States District Judge**
**              July 19, 2017**