**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MIRLIN S. TOOMER

              Plaintiff,

v.

MARK T. ESPER,[1] in his official
capacity as Secretary of
Defense,

              Defendant.

No. 11-cv-2216 (EGS)

## MEMORANDUM OPINION

Plaintiff Mirlin S. Toomer ("Ms. Toomer"), an African-American woman and a former employee of the United States Department of Defense's National Geospatial-Intelligence Agency ("NGA"), brought this action against the United States Secretary of Defense (the "Secretary") under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* On July 19, 2017, this Court issued a Memorandum Opinion and separate Order adopting Magistrate Judge G. Michael Harvey's Report and Recommendation ("R & R"), and granting summary judgment in favor of the Secretary. *See Toomer v. Mattis* ("*Toomer II*"), 266 F. Supp. 3d 184, 190 (D.D.C. 2017); *see also*

---

[1] Secretary Esper has been automatically substituted as the defendant in this case. *See* Fed. R. Civ. P. 25(d).

*Toomer v. Carter* ("*Toomer I*"), No. 11-cv-2216, 2016 WL 9344023, at *1 (D.D.C. Mar. 24, 2016).

Pending before the Court is Ms. Toomer's Motion for Relief from Judgment pursuant to Federal Rule of Civil Procedure 60(b). Upon careful consideration of the motion, the response and reply thereto, the applicable law, and the entire record herein, the Court **DENIES** Ms. Toomer's Motion for Relief from Judgment.

## I.   Background

The Court assumes the parties' familiarity with the background in this case, which is set forth in greater detail in the prior opinions. *See Toomer II*, 266 F. Supp. 3d at 191 (incorporating by reference Magistrate Judge Harvey's thorough recitation of the facts); *see also Toomer I*, 2016 WL 9344023, at *1-*11. The Court will briefly summarize the facts relevant to the instant motion, and then set forth the procedural background.

### A. Factual Background

Ms. Toomer, an African-American female over the age of forty, worked as an Imagery Analyst at NGA. *Toomer I*, 2016 WL 9344023, at *4. In January 2010, Ms. Toomer sponsored Matthew Esteves ("Mr. Esteves"), a white male, who was a new NGA employee. *Id.* Diana Stiger ("Ms. Stiger"), a white female, supervised them in her role as NGA's branch chief. *Id.* Ms. Toomer referred to her mentee, Mr. Esteves, as "Pumpkin."

2

*Toomer II*, 266 F. Supp. 3d at 202 (Ms. Toomer to Mr. Esteves: "If you continue to ignore me then I am going to come over there an[d] smooch you until you acknowledge me!").

As their friendly mentor-mentee relationship soured, Ms. Toomer began the process of filing a complaint with the Equal Employment Opportunity ("EEO") office in May 2010. *Toomer I*, 2016 WL 9344023, at *4. On May 14, 2010, Ms. Toomer lodged an informal discrimination claim with Ms. Stiger, alleging that Mr. Esteves called her names and threatened to cut her hair. *Id.* Ms. Stiger's investigation revealed that Mr. Esteves called Ms. Toomer a "dummy," and that Ms. Toomer engaged in the banter. *Id.* Later, Ms. Toomer voluntarily withdrew her claim. *Id.* And Ms. Stiger issued a letter of caution to Mr. Esteves, requiring him to attend respect-in-the-workplace training. *Id.* at *5. Mr. Esteves attended the training. *Id.* Based upon the human resources department's recommendation and Ms. Toomer's failure to professionally communicate with her colleagues, Ms. Stiger also required Ms. Toomer to attend a respect-in-the-workplace training course. *Id.* Ms. Toomer failed to do so. *Id.*

In May 2010, Ms. Toomer's mid-year performance review became available on NGA's human resources computer software. *Id.* at *4. Ms. Toomer's review, which was prepared by Ms. Stiger in early 2010, identified several performance deficiencies, and it stated that a Performance Improvement Plan ("PIP") was under

development to address the deficiencies. *Id*. Before issuing the
PIP, Ms. Stiger received complaints from Ms. Toomer's colleagues
that Ms. Toomer was having a loud telephone conversation at her
workstation on May 17, 2010. *Id*. at *5. Unbeknownst to
Ms. Stiger at that time, Ms. Toomer had a loud telephone
conversation with her EEO representative on May 17, 2010
regarding her complaint about Mr. Esteves. *Id*. On June 17, 2010,
Ms. Stiger issued a letter of reprimand to Ms. Toomer for the
telephone conversation because employees were prohibited from
having loud, disruptive conversations. *Id*.

   On June 3, 2010, Ms. Toomer took unscheduled leave without
Ms. Stiger's approval. *Id*. While Ms. Toomer contacted another
supervisor regarding her absence, Ms. Toomer failed to follow
the agency's policy requiring her to contact Ms. Stiger or
leaving her a voicemail message. *Id*. A record of Ms. Toomer's
leave shows that it was approved, and that Ms. Stiger reiterated
the sick-leave policy in the record. *Id*. In response, Ms. Toomer
alleged that a white male employee was not disciplined for a
similar violation. *Id*. When Ms. Stiger issued a letter of
reprimand, dated June 17, 2010, to Ms. Toomer, Ms. Stiger
reiterated that Ms. Toomer was required to attend the respect-
in-the-workplace training course. *Id*. Because Ms. Toomer refused
to attend the course, Ms. Toomer received a one-day suspension
for insubordination. *Id*.

On June 8, 2010, Ms. Toomer approached Ms. Stiger to request the removal of an action figure, claiming that it was offensive. *Id.* at *6. Representing the mythical creature from the wild, the action figure was a "Bigfoot" doll. *Id.* at *5. "The action figure was brown in color, made of hard plastic, had reticulating arms and legs, had fur engraved in the plastic . . ., and was approximately six to eight inches in length." *Id.* The doll was sold in a box bearing the name "Bigfoot" in large letters, and it entered NGA as part of a holiday gift exchange in either December 2008 or December 2009. *Id.* One NGA employee—a white male with a full beard whose nickname was "Bigfoot"—possessed the action figure until his departure from NGA. *Id.* But it remained on display in various positions within NGA, including on the top of a cubicle cabinet inside the box and later tangled in web-like strings on a cabinet above the desk of one of Ms. Toomer's colleagues. *Id.* at *6.

Between June 8, 2010 and June 23, 2010, the "Bigfoot" doll was tightly wrapped—as if mummified—by a thin white cord from its ankles to its chest, with additional strands wrapped around its neck and arms. *Toomer II*, 266 F. Supp. 3d at 194. And the doll hung in the air from a cardboard panel on a cabinet above the desk of Tom Ryan ("Mr. Ryan"), one of Ms. Toomer's colleagues. *Toomer I*, 2016 WL 9344023, at *6. The panel resembled a men's bathroom door, which "was created in silent

5

protest of the perennially malfunctioning men's bathroom in the office." *Id.* In response to Ms. Toomer's request for removal of the "Bigfoot" doll, Ms. Stiger allegedly stated: "It is not offensive to me and it is not a monkey. It is an ape. You don't know the difference? Do you think of yourself as a monkey?" *Id.* But Ms. Stiger denied that conversation. *Id.*

On June 23, 2010, Ms. Toomer notified NGA's security team, and a security officer took photographs of the doll. *Id.* at *7. Ms. Toomer sent a letter, dated July 10, 2010, to an EEO counselor, raising the June 17, 2010 letter of reprimand and the issue of the "Bigfoot" doll. *Id.* By June 30, 2010, Ms. Stiger had completed Ms. Toomer's PIP. *Id.* at *8. Ms. Toomer was then reassigned to a different branch within NGA under the direction of a different supervisor. *Id.* In turn, the PIP completed by Ms. Stiger was no longer in effect because Ms. Toomer was no longer under Ms. Stiger's supervision. *Id.*

On September 9, 2010, Ms. Toomer inadvertently received an e-mail intended for NGA's senior-level management with an attached spreadsheet containing performance ratings for NGA employees. *Id.* The sender informed Ms. Toomer that the e-mail contained sensitive and confidential personal information, consisting of materials that were protected under the Privacy Act. *Id.* On the same day, the deputy director, Mark Dial ("Mr. Dial"), instructed Ms. Toomer to permanently delete the e-

mail and destroy any hard copies. *Id.* Ms. Toomer, however,
refused to do so. *Id.*

Mr. Dial then met with Ms. Toomer, reiterating that she
must delete the e-mail. *Id.* Ms. Toomer claimed that Mr. Dial
exhibited disrespectful behavior during the meeting, including:
(1) yelling at her to shut the door and sit down;
(2) threatening to terminate her employment; and (3) slamming
his hands on the table. *Toomer II*, 266 F. Supp. 3d at 199.
Instead of deleting the e-mail, Ms. Toomer forwarded to a
colleague the e-mail that contained the Privacy Act materials,
and the colleague printed two hard copies for Ms. Toomer. *Toomer
I*, 2016 WL 9344023, at *8. Ms. Toomer took the hard copies from
NGA to her home. *Id.*

From September 10, 2010, to September 21, 2010, Ms. Toomer
did not report to work, and she did so without authorization.
*Id.* at *8-*9. Mr. Dial sent a memorandum to Ms. Toomer's home
address on September 14, 2010 with certain directives:
(1) directing her to return to work with all hard copies of the
Privacy Act materials; (2) informing her of the continuing
Privacy Act violation; and (3) warning her that failure to
comply with his directives could result in termination. *Id.* at
*8. Ms. Toomer asserted claims in a letter, dated September 13,
2010, to an EEO counselor regarding the reprimand letter, doll,
and the denial of training. *Id.* at *9. Meanwhile, after

receiving Mr. Dial's September 14, 2010 memorandum, Ms. Toomer
spoke with him over the phone rather than returning to work on
September 17, 2010. *Id.* Eventually, Ms. Toomer returned to work.
*Id.*

On September 22, 2010, Ms. Toomer briefly met with Mr. Dial
and a human resources representative, Tom Guercio
("Mr. Guercio"), in Mr. Dial's office about the Privacy Act
breach. *Id.* Ms. Toomer demanded that security personnel attend
the meeting. *Id.* After approximately two minutes, Ms. Toomer
decided to leave the meeting due to the absence of security
personnel. *Id.* According to Ms. Toomer, Mr. Dial and Mr. Guercio
ordered her to sit down, and Mr. Dial blocked the door as she
tried to exit his office. *Id.* Ms. Toomer testified that
Mr. Guercio grabbed her hand and bent her arm back when she put
her hand on the doorknob. *Id.* Ms. Toomer asserted additional
allegations: (1) she screamed; (2) Mr. Guercio released her;
(3) they exited the office; (4) Mr. Dial demanded her telephone
number; (5) Mr. Dial told her that she would be placed on
administrative leave; and (6) she was escorted out of the
building. *Id.*

In October 2010, Ms. Toomer submitted a formal EEO
complaint. *Id.* at *10. Months later, on February 28, 2011, NGA
issued Ms. Toomer a Notice of Proposed Removal. *Id.* For the
removal process, the deciding official, David White

("Mr. White"), afforded Ms. Toomer with the opportunity for oral and written submissions. Def.'s Decl. of Barbara Ritter ("Ritter Decl."), ECF No. 68-13 at 27.[2] And NGA received Ms. Toomer's response on May 3, 2011. *Id.*

On June 30, 2011, NGA terminated Ms. Toomer's employment. *Toomer I*, 2016 WL 9344023, at *10. Mr. White issued the final decision, explaining that he terminated Ms. Toomer because she repeatedly refused to: (1) delete Privacy Act materials that had been inadvertently e-mailed to her; and (2) destroy or return the hard copies of those materials. *Id.* Mr. White further cited Ms. Toomer's absence without leave on multiple occasions during the time that her supervisors had attempted to resolve the Privacy Act breach. *Id.* Mr. White rendered the final decision based on Ms. Toomer's employment record and meetings with agency officials, including meetings with Mr. Dial and Mr. Guercio. *Id.* Following her termination, Ms. Toomer submitted amendments to her formal EEO complaint in 2011. *Id.*

**B. Procedural Background**

**1. Present Lawsuit**

On December 14, 2011, Ms. Toomer filed the instant action under Title VII and ADEA, asserting four claims: (1) racially

---

[2] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

hostile work environment ("Count I"); (2) retaliation ("Count II"); (3) racial discrimination ("Count III"); and (4) age discrimination ("Count IV"). *Id.* at *10-*11. Following the close of discovery, the Secretary moved for summary judgment on June 5, 2014. *Id.* at *11. Thereafter, Ms. Toomer filed a motion for partial summary judgment as to Count I and for spoliation sanctions. *Id.* On February 23, 2015, this Court referred the case to Magistrate Judge Harvey for the R & R. *Id.* Ms. Toomer then filed a motion for a hearing on the Secretary's alleged spoliation of evidence (*i.e.* the action figure). *Id.*

On March 24, 2016, Magistrate Judge Harvey issued the R & R, recommending that this Court grant the Secretary's motion for summary judgment, deny Ms. Toomer's motion for partial summary judgment, deny her motion for spoliation sanctions, and deny her motion for a hearing on the alleged spoliation of evidence. *Id.* at *33. Ms. Toomer filed objections to the R & R— specifically, objecting to: (1) the R & R's findings as to her hostile work environment and retaliation claims (Counts I and II); and (2) the recommendation to deny her motions for spoliation sanctions and a hearing. *See Toomer II*, 266 F. Supp. 3d at 192; *see also* Pl.'s Objs., ECF No. 99 at 11, 21, 34, 36, 41. Ms. Toomer did not raise objections to the R & R with respect to her claims for discrimination based on race and age, thereby waiving review of Magistrate Judge Harvey's conclusions

as to Counts III and IV. *See Toomer II*, 266 F. Supp. 3d at 191
(district court may review only those issues that the parties
have raised in their objections to the R & R); *see also* LCvR
72.3(b).

## 2. The Court's Prior Ruling

On July 19, 2017, this Court overruled Ms. Toomer's
objections to the R & R and adopted the R & R in its entirety.
Mem. Op., ECF No. 105 at 1-2, 44-45. On the same day, the Court
entered a final, appealable Order ("July 19, 2017 Final Order").
Order, ECF No. 104 at 1-2. The Court held that the Secretary was
entitled to summary judgment. *Toomer II*, 266 F. Supp. 3d at 192-
205. First, the Court found that Ms. Toomer failed to prove a
racially hostile work environment claim because her proffered
facts—the display of the action figure, Ms. Stiger's alleged
comments to Ms. Toomer regarding the action figure, and certain
disciplinary actions taken against Ms. Toomer—were not
sufficiently severe or pervasive to alter the conditions of her
employment or create an abusive work environment. *Id*. at 192-97.

Next, the Court found that Ms. Toomer did not establish a
retaliation claim because the alleged retaliatory actions—
(1) Mr. Dial's alleged verbal assault; (2) Mr. Guercio's alleged
physical assault; (3) Ms. Stiger's alleged threat; (4) the
reprimand for Ms. Toomer's disruptive phone call; (5) the order
for Ms. Toomer to attend the respect-in-the-workplace training

session and the one-day suspension for her failure to attend that session; (6) the negative performance review and the letter of reprimand; and (7) the termination—were either not materially adverse employment actions or justified by the Secretary's proffered legitimate, non-retaliatory reasons that Ms. Toomer failed to rebut as pretext for retaliation. *Id.* at 197-205.

The Court granted summary judgment in favor of the Secretary as to Ms. Toomer's retaliatory hostile work environment claim, reasoning that Ms. Toomer's list of alleged grievances failed to meet the threshold for a retaliatory hostile work environment given that the alleged retaliatory incidents involved "different people doing different things in different contexts." *Id.* at 205 (quoting *Baird v. Gotbaum*, 792 F.3d 166, 171 (D.C. Cir. 2015)). Finally, the Court found that sanctions for spoliation of evidence—the action figure—and a hearing regarding the same were unwarranted for two reasons: (1) the action figure was recovered, located, and presented to Ms. Toomer for inspection during the litigation; and (2) the photographic evidence in the record depicted how the action figure was displayed to Ms. Toomer between June 8, 2010, and June 23, 2010. *Id.* at 206.

Ms. Toomer did not file an appeal with the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit"). *See generally* Docket for Civ. Action No. 11-2216.

### 3. Ms. Toomer's Motion

On July 18, 2018, Ms. Toomer filed a motion for relief from the July 19, 2017 Final Order pursuant to Rule 60(b)(1) and (6). *See* Pl.'s Mot. for Relief ("Pl.'s Mot."), ECF No. 106 at 1; *see also* Pl.'s Mem. of P. & A. in Supp. of Pl.'s Mot. ("Pl.'s Mem."), ECF No. 106 at 3–26. Thereafter, the Secretary filed his opposition brief. *See generally* Def.'s Opp'n, ECF No. 108. Ms. Toomer then filed her reply brief. *See generally* Pl.'s Reply, ECF No. 109. The motion is ripe and ready for the Court's adjudication.

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 60(b), the court, "[o]n motion and just terms, . . . may relieve a party or its legal representative from a final judgment, order, or proceeding" on one of six enumerated grounds. Fed. R. Civ. P. 60(b). "In considering a Rule 60(b) motion, the district court must strike a delicate balance between the sanctity of final judgments . . . and the incessant command of a court's conscience that justice be done in light of *all* the facts." *PETA v. HHS*, 901 F.3d 343, 354–55 (D.C. Cir. 2018) (citation and internal quotation marks omitted). "[T]he decision to grant or deny a [R]ule 60(b) motion is committed to the discretion of the [d]istrict [c]ourt[.]" *United Mine Workers of Am. 1974 Pension*

13

*v. Pittston Co.*, 984 F.2d 469, 476 (D.C. Cir. 1993).

The movant bears "the burden of establishing that its prerequisites are satisfied." *Owens v. Republic of Sudan*, 864 F.3d 751, 819 (D.C. Cir. 2017) (quoting *Gates v. Syrian Arab Republic*, 646 F.3d 1, 5 (D.C. Cir. 2011)). A party cannot invoke Rule 60(b) "simply to rescue a litigant from strategic choices that later turn out to be improvident." *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980); *accord Ackermann v. United States*, 340 U.S. 193, 198 (1950) ("There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from.").

## III. Analysis

In moving for relief from the Court's July 19, 2017 Final Order, Ms. Toomer relies upon Rule 60(b)(1) and Rule 60(b)(6). Pl.'s Mem., ECF No. 106 at 11, 16, 20, 24.[3] Ms. Toomer contends that she has identified two grounds for relief: (1) "a clear error in the [C]ourt's legal reasoning" under Rule 60(b)(1); and

---

[3] Ms. Toomer properly moves for relief from the Court's July 19, 2017 Final Order under Rule 60(b). Although the Court did not issue a final judgment as a separate document pursuant to Federal Rule of Civil Procedure 58, the Court's July 19, 2017 Final Order constitutes a final judgment because "when a district court enters an order that would otherwise constitute a final judgment but fails to set it forth in a separate document as required by Rule 58, the judgment is nevertheless considered final 150 days later." *Goddard v. Serv. Employees Int'l Union Local 32BJ*, 310 F.R.D. 190, 192 (D.D.C. 2015) (citing *Cambridge Holdings Grp., Inc. v. Fed. Ins. Co.*, 489 F.3d 1356, 1363-64 (D.C. Cir. 2007)).

14

(2) "the existence of extraordinary circumstances" under Rule 60(b)(6). Pl.'s Reply, ECF No. 109 at 1. The Secretary disagrees, arguing that Ms. Toomer's motion is an attempt to re-litigate the issues that this Court resolved in *Toomer II*. Def.'s Opp'n, ECF No. 108 at 3. According to the Secretary, Ms. Toomer's motion "rests entirely on her disagreement with this Court's legal reasoning in applying the undisputed material facts, including photographic evidence, to her claims." *Id.*

The Court analyzes the parties' arguments in turn, concluding that Ms. Toomer fails to meet her burden of demonstrating that she is entitled to relief under Rule 60(b)(1) and Rule 60(b)(6).

### A. Ms. Toomer Is Not Entitled to Relief Under Rule 60(b)(1)

Rule 60(b)(1) allows the Court to grant post-judgment relief for "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Ms. Toomer does not deny that her motion fails to articulate any mistake, inadvertence, surprise, or excusable neglect that entitles her to relief under Rule 60(b)(1). *See* Pl.'s Reply, ECF No. 109 at 1; *see also* Def.'s Opp'n, ECF No. 108 at 3.

Ms. Toomer's motion is premised on the argument that this Court "committed clear legal error" when ruling: (1) "'none of Ms. Toomer's proffered facts, taken alone or in combination,

15

suffices to make out a claim of a racially hostile work environment.'" Pl.'s Mem., ECF No. 106 at 11 (quoting *Toomer II*, 266 F. Supp. 3d at 193); and (2) "as a matter of law that each allegedly retaliatory action by [the Secretary] either did not constitute an adverse employment action or was justified by a legitimate, non-discriminatory reason," *id.* at 20. And Ms. Toomer argues that the issue of "whether a district court's *legal error* . . . is redressable under Rule 60(b)(1) presents an open question within this Circuit." Pl.'s Reply, ECF No. 109 at 1 (emphasis added).

    "Standing alone, a party's disagreement with a district court's legal reasoning or analysis is rarely, if ever, a basis for relief under Rule 60(b)(1)." *Muñoz v. Bd. of Trs. of Univ. of D.C.*, 730 F. Supp. 2d 62, 67 (D.D.C. 2010). "Federal courts are split over whether parties may use Rule 60(b) motions to address alleged mistakes of legal reasoning." *Jordan v. U.S. Dep't of Labor*, 331 F.R.D. 444, 449 (D.D.C. 2019), *aff'd*, No. 19-5201, 2020 WL 283003 (D.C. Cir. Jan. 16, 2020). "Many federal appellate courts do not permit parties to invoke Rule 60(b)(1) to assert that the district court erred in its legal analysis, reasoning that an appeal is the more appropriate method of challenging alleged legal mistakes by the court." *Avila v. Dailey*, 404 F. Supp. 3d 15, 23 (D.D.C. 2019) (citing cases). And the courts that allow parties to raise alleged

"legal errors" in Rule 60(b)(1) motions involve "circumstances under which such errors are cognizable" and "usually very limited, such as an intervening change in law." *Muñoz*, 730 F. Supp. 2d at 67.

Although the D.C. Circuit has "declined to decide whether errors in legal reasoning may be corrected by Rule 60(b)(1) motions," *Computer Prof'ls for Soc. Responsibility v. U.S. Secret Serv.*, 72 F.3d 897, 903 (D.C. Cir. 1996), the case law in this District indicates that Rule 60(b)(1) applies in two situations: (1) a district court committed "an 'obvious error,' such as basing its legal reasoning on case law that it failed to realize had recently been overturned," *Muñoz*, 730 F. Supp. 2d at 67 (citing *D.C. Fed'n of Civic Ass'ns v. Volpe*, 520 F.2d 451, 451–53 (D.C. Cir. 1975)); and (2) "in the very limited situation when the controlling law of the [C]ircuit changed between the time of the court's judgment and the Rule 60 motion," *Bestor v. FBI*, 539 F. Supp. 2d 324, 328 (D.D.C. 2008).

None of those circumstances are present here. The Secretary argues—and the Court agrees—that Ms. Toomer fails to demonstrate any error in this Court's legal reasoning or show that this Court committed an "obvious error" in granting summary judgment in favor of the Secretary. Def.'s Opp'n, ECF No. 108 at 4. Nor does Ms. Toomer assert a change in controlling law between the entry of the July 19, 2017 Final Order and the filing of her

Rule 60(b) motion. *See* Pl.'s Mem., ECF No. 106 at 11-19, 20-24; *see also* Pl.'s Reply, ECF No. 109 at 5-12. Rather, Ms. Toomer advances the arguments previously made in her motion for partial summary judgment that were rejected in *Toomer I* and *Toomer II*. *Compare* Pl.'s Mem., ECF No. 106 at 9-19, *with* Pl.'s Mem. in Supp. of Pl.'s Mot. for Partial Summ. J., ECF No. 70 at 7-16. Relief under Rule 60(b)(1) is unwarranted where a plaintiff, like Ms. Toomer, points to no "obvious error" and "merely recycles her twice-rejected arguments[.]" *Douglas v. D.C. Hous. Auth.*, 306 F.R.D. 1, 5-6 (D.D.C. 2014).

### 1. Hostile Work Environment Claim

The Court turns to Ms. Toomer's arguments for post-judgment relief with respect to her racially hostile work environment claim. Ms. Toomer argues that "[t]aken either singly or in combination, the display of the lynched black monkey figure that was hung near [her] workstation, and Ms. Stiger's racially offensive query as to whether [Ms.] Toomer thought of herself 'as a monkey' after [Ms.] Toomer complained about the lynched monkey display, were sufficient to create a racially hostile work environment." Pl.'s Mem., ECF No. 106 at 11. The Secretary contends that "this Court correctly determined that the alleged conduct was not sufficiently pervasive to support a hostile work environment claim." Def.'s Opp'n, ECF No. 108 at 7.

To prevail on her hostile work environment claim,
"[Ms. Toomer] must show that [her] employer subjected [her] to
'discriminatory intimidation, ridicule, and insult' that is
'sufficiently severe or pervasive to alter the conditions of
[her] employment and create an abusive working environment.'"
*Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008)
(quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).
In evaluating this claim, "the [C]ourt 'looks to the totality of
the circumstances, including the frequency of the discriminatory
conduct, its severity, its offensiveness, and whether it
interferes with an employee's work performance.'" *Ayissi-Etoh v.
Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013) (per curiam)
(quoting *Baloch*, 550 F.3d at 1201).

In applying this framework, the Court concluded that
Ms. Toomer failed to sustain a hostile work environment claim.
*Toomer II*, 266 F. Supp. 3d at 192-197. Ms. Toomer argues that
the Court erred in ruling that her proffered facts failed to
demonstrate a racially hostile work environment. *See* Pl.'s Mem.,
ECF No. 106 at 11-16. In Ms. Toomer's subjective view, the
action figure constitutes a racially-insensitive "lynched monkey
display." Pl.'s Mem., ECF No. 106 at 11; *see also* Pl.'s Reply,
ECF No. 109 at 7. As the Secretary correctly notes, this Court
in *Toomer II* found that Ms. Toomer's characterization of the
action figure was unsupported by the summary judgment record.

19

*See* Gov't's Opp'n, ECF No. 108 at 5.

This Court recognizes that the nation's shameful history of negative racial stereotypes is deeply embedded in American society. *See Burkes v. Holder*, 953 F. Supp. 2d 167, 179 (D.D.C. 2013) (Sullivan, *J.*). And the Court cannot ignore that those stereotypes persist in present times with characterizations and depictions of African-Americans as monkeys, apes, beasts, and animals.[4] Ms. Toomer's argument—that this Court "committed a clear legal error when it failed to place the subject display of the lynched monkey figure in the correct historical context," Pl.'s Reply, ECF No. 109 at 8—is unavailing. Ms. Toomer's own words belie her assertion. *See* Pl.'s Mem., ECF No. 106 at 11 ("[T]his Court has previously recognized that monkey and noose imagery 'are powerful symbols of racism and violence against African Americans.'" (quoting *Burkes*, 953 F. Supp. 2d at 179)).

In *Toomer II*, this Court expressly recognized "in the past that it is reasonable to conclude 'that the use of monkey imagery is intended as a racial insult where no benign explanation for the imagery appears.'" 266 F. Supp. 3d at 195 (quoting *Burkes*, 953 F. Supp. 2d at 179). Based on the summary

---

[4] *See* Kristine Phillips & Lindsey Bever, *She Lost Her Job After Calling Michelle Obama an 'Ape in heels.' Now She's Returning to Work*, Wash. Post (Dec. 13, 2016) https://www.washingtonpost.com/news/post-nation/wp/2016/12/13/she-lost-her-job-after-calling-michelle-obama-an-ape-in-heels-now-shes-returning-to-work/.

judgment record in this case, however, the Court agreed with
Magistrate Judge Harvey's finding that the action figure—"a
monkey-like, ape-like, or Bigfoot-like action figure"—was
wrapped in the white cord or rope in a manner that could not be
fairly described as hanging from a noose. *Id.* at 194. There is
no noose at issue in this case, and there is a benign
explanation for the action figure. *Id.* at 195. It is undisputed
that a white male colleague was jokingly referred to as
"Bigfoot." *Id.* Relying on the undisputed photographic evidence,
this Court found that a "*reasonable observer* of the images that
Ms. Toomer has confirmed show the action figure displayed as she
observed it in her workplace would not describe that action
figure as being hung in a noose." *Id.* (emphasis added).

Next, this Court found that Ms. Stiger's alleged statement
in response to Ms. Toomer's complaint of the action figure—"an
unambiguously non-racial workplace display"—fails to rise to the
requisite level of severity to constitute a racially hostile
work environment. *Id.* at 196. To support her position,
Ms. Toomer relies on the D.C. Circuit's decision in *Ayissi-Etoh
v. Fannie Mae*, 712 F.3d 572 (D.C. Cir. 2013) for the proposition
that "the single instance of Ms. Stiger asking [Ms.] Toomer
whether [she] thought of herself as a monkey was sufficient to
create a hostile work environment." Pl.'s Mem., ECF No. 106 at
15.

The D.C. Circuit recognized that the "single incident [of using the n-word] *might* well have been sufficient to establish a hostile work environment." *Ayissi-Etoh*, 712 F.3d at 577 (emphasis added); *id*. at 580 (Kavanaugh, J., concurring) ("[I]n my view, being called the n-word by a supervisor—as [plaintiff] alleges happened to him—suffices by itself to establish a racially hostile work environment."). As explained in *Toomer II*, the D.C. Circuit in *Ayissi-Etoh* suggested, without holding, that "the use of an *unambiguously* racial epithet such as 'nigger' by a supervisor" could alone be sufficient to establish a hostile work environment. *Toomer II*, 266 F. Supp. 3d at 196 (emphasis added; internal quotation marks omitted) (quoting *Ayissi-Etoh*, 712 F.3d at 577). Nonetheless, *Ayissi-Etoh* is distinguishable from this case.

In *Ayissi-Etoh*, an African-American employee brought various claims against his employer, including a hostile work environment claim under 42 U.S.C. § 1981. 712 F.3d at 574, 577.[5] The plaintiff alleged that, after receiving a promotion, but being denied a salary increase, his manager told him: "For a young black man smart like you, we are happy to have your expertise; I think I'm already paying you a lot of money." *Id.*

---

[5] Courts evaluate hostile work environment claims under Section 1981 and Title VII using the same analytical framework. *See Ayissi-Etoh*, 712 F.3d at 576.

at 574. The plaintiff also alleged that the vice president, on a separate occasion, shouted at him to "get out of my office nigger." *Id*. The plaintiff filed an EEOC complaint, his supervisor allegedly instructed him to either "drop the racial discrimination claim or be fired," and the plaintiff was later terminated. *Id*.

The D.C. Circuit reversed the district court's grant of summary judgment in favor of the employer on the hostile work environment claim, *id*. at 578, concluding that "a reasonable jury could find [the manager's] and [vice president's] behavior sufficiently severe or pervasive as to create a hostile work environment," *id*. at 577. The D.C. Circuit reasoned that the use of the n-word alone might have been sufficient to establish a hostile work environment claim, but the plaintiff alleged more than the "deeply offensive racial epithet." *Id*. The plaintiff also alleged: (1) the "young black man" statement; (2) the plaintiff "having to continue working with [the manager] for nearly three months, until [the manager] was ultimately fired"; and (3) the plaintiff being forced to continue working with the manager "made [the plaintiff] ill and caused him to miss work on at least one occasion." *Id*.

Here, Ms. Stiger's alleged question to Ms. Toomer—"Do you think of yourself as a monkey?"—is not akin to the use of the unambiguously racial epithet by the vice president in *Ayissi-*

*Etoh*. As this Court previously explained, "Ms. Stiger's offensive question is more akin to the sort of derogatory remarks that courts in this Circuit have deemed non-actionable in the past." *Toomer II*, 266 F. Supp. 3d at 196 (citing cases). Relying on the principles espoused in *Ayissi-Etoh*, this Court found that "Ms. Toomer has not pointed to a sufficiently pervasive pattern of racially hostile conduct." *Id*. at 197. This Court reasoned that "a reasonable observer would not view the action figure display as a 'racially offensive event,' so Ms. Stiger's comment—'Do you think of yourself as a monkey?'—was not 'part of a pervasive *pattern* of hostility and ridicule' that is necessary to sustain a hostile work environment claim on pervasiveness grounds." *Id*. (citations omitted). And, unlike the plaintiff in *Ayissi-Etoh* who was forced to continue working with the manager, Ms. Toomer was eventually reassigned from Ms. Stiger's unit. *Id*. at 202-203. None of Ms. Toomer's arguments alter the Court's legal conclusion that her proffered facts failed to create a racially hostile work environment.

## 2. Retaliation Claim

The Court next considers Ms. Toomer's argument that this Court "committed clear legal error when it ruled as a matter of law that each allegedly retaliatory action by Defendant either did not constitute an adverse employment action or was justified by a legitimate, non-discriminatory reason." Pl.'s Mem., ECF No.

106 at 20. The Secretary argues that the Court's previous ruling "undertook a detailed discussion of the undisputed record evidence and properly concluded that there was no basis for [Ms. Toomer's] retaliation claims." Def.'s Opp'n, ECF No. 108 at 7-8. For the reasons explained below, Ms. Toomer fails to demonstrate that this Court committed an "obvious error" because she does not point to a single controlling decision that this Court failed to consider in rejecting her arguments in *Toomer II*. *See Muñoz*, 730 F. Supp. 2d at 67.

To prevail on her retaliation claim, "[Ms. Toomer] must first establish a prima facie case of retaliation by showing (1) that [she] engaged in statutorily protected activity; (2) that [she] suffered a materially adverse action by [her] employer; and (3) that a causal link connects the two." *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009). If the plaintiff establishes a *prima facia* case, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its actions. *Id.* "If the employer does so, the burden-shifting framework disappears, and a court reviewing summary judgment looks to whether a reasonable jury could infer . . . retaliation from all the evidence[.]" *Id.* (citation omitted).

The D.C. Circuit has instructed that "'the district court need not—*and should not*—decide whether the plaintiff actually made out a prima facie case,'" but the district court should

25

determine whether "all the evidence, taken together, [is] insufficient to support a reasonable inference of discrimination." *Id.* at 678 (quoting *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008)).

Viewing the evidence in the light most favorable to Ms. Toomer and giving her the benefit of all reasonable inferences, this Court concluded that no reasonable jury could infer retaliation from the evidence in this case. *Toomer II*, 266 F. Supp. 3d at 198-205. In her Rule 60(b) motion, Ms. Toomer repeats the same arguments that were rejected in *Toomer II*. *See* Pl.'s Mem., ECF No. 106 at 20-24; *see also* Def.'s Opp'n, ECF No. 108 at 7-9. Ms. Toomer argues that she was subjected to retaliation in a number of ways, including being ordered to attend a respect-in-the-workplace training after she complained to Ms. Stiger and the EEO about "Mr. Esteves's aggressive and sexually offensive harassment." Pl.'s Mem., ECF No. 106 at 21.

Putting aside the fact that there are no allegations of discrimination based on sex or gender, there is no dispute that Ms. Toomer withdrew her harassment claim as to Mr. Esteves. *See id.*; *see generally* Compl., ECF No. 1 at 2-16. Contrary to Ms. Toomer's contention that her supervisor "purposefully intimidated [her] and dissuaded her from pursuing her EEO complaint," the record proves otherwise. Pl.'s Mem., ECF No. 106 at 21. This Court found that Ms. Toomer failed to offer any

evidence of an alleged threat by Ms. Stiger in response to her harassment complaints as to Mr. Esteves "other than her own self-serving assertions and that such unsupported, self-serving assertions do not give rise to a triable issue of fact." *Toomer II*, 266 F. Supp. 3d at 200.

Ms. Toomer ignores this Court's finding that Ms. Stiger ordered her to attend the respect-in-the-workplace training course, which Ms. Toomer failed to do, because "Ms. Stiger's assessment was that, while Ms. Toomer's co-worker had engaged in some inappropriate and unacceptable workplace conduct, Ms. Toomer was 'feeding the repartee' with that co-worker." *Id*. at 202 (citation omitted). The Court found that Ms. Toomer failed to rebut as pretext Ms. Stiger's stated rationale for the order because "undisputed record evidence confirms that Ms. Toomer *did* engage in the sort of repartee with her co-worker that would likely lead to further words and conduct inappropriate for the workplace." *Id*. And the Court found that Ms. Toomer did not produce sufficient evidence for a reasonable jury to find that her supervisor's stated reason for the one-day suspension was not a result of Ms. Toomer's failure to attend the training session. *Id*.

The Court rejects Ms. Toomer's argument that the letter of reprimand and negative performance review support her retaliation claim. *See* Pl.'s Mem., ECF No. 106 at 21. The D.C.

Circuit's decision in *Baloch v. Kempthorne*, 550 F.3d 1191 (D.C. Cir. 2008) is instructive on this point. In that case, the D.C. Circuit held that a letter of reprimand, a letter of counseling, and an unsatisfactory performance review as alleged retaliation for the plaintiff's discrimination complaint did not constitute materially adverse actions for two reasons. *Baloch*, 550 F.3d at 1199. First, the letter of reprimand "contained no abusive language, but rather job-related constructive criticism, which 'can prompt an employee to improve her performance.'" *Id.* (quoting *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 648 (7th Cir. 2005)). Second, "performance reviews typically constitute adverse actions only when attached to financial harms" and the plaintiff was paid at the highest step for his grade. *Id.*

Like the plaintiff in *Baloch*, Ms. Toomer did not produce evidence demonstrating that the letter of reprimand or the "negative performance evaluation could affect [her] position, grade level, salary, or promotion opportunities." *Id.* Under the law of this Circuit, the letter of reprimand for Ms. Toomer's failure to adhere to the policies and her negative performance review are not materially adverse employment actions. *See Toomer I*, 2016 WL 9344023, at *25. Even assuming, *arguendo*, that those alleged retaliatory acts were materially adverse actions, Ms. Toomer fails to proffer sufficient evidence to rebut as pretext her employer's legitimate, non-retaliatory reasons. *See*

Pl.'s Mem., ECF No. 106 at 21. The issuance of the letter of reprimand was based on Ms. Toomer's violations of workplace policies. *Toomer II*, 266 F. Supp. 3d at 202-203. The PIP followed the negative performance review issued by Ms. Stiger, but the PIP was no longer in effect when Ms. Toomer was reassigned to a different branch under the direction of a different supervisor. *Id*.

Ms. Toomer's next argument—that her termination from employment constitutes retaliation—fares no better. *See* Pl.'s Mem., ECF No. 106 at 22. The Secretary proffered a legitimate, non-retaliatory reason for Ms. Toomer's termination when Mr. White, the deciding official, rendered the termination decision. *Toomer II*, 266 F. Supp. 3d at 203-204. According to Mr. White, Ms. Toomer was terminated because she repeatedly refused to delete, destroy, and return the materials protected under the Privacy Act. *Id*. at 204. Because it is beyond dispute in the summary judgment record that Ms. Toomer did not comply with the directives regarding those materials, this Court found that Ms. Toomer failed to demonstrate that the Secretary's non-retaliatory reason was pretextual. *Id*.

Invoking a theory of discrimination, which is commonly referred to as the "cat's paw theory,"[6] Ms. Toomer argues that

---

[6] Under this theory, "if a supervisor" acting within the scope of employment "[1] performs an act motivated by [discriminatory]

this Court "erroneously overlooked established law" on that theory. Pl.'s Mem., ECF No. 106 at 23 (citation omitted); *see also* Pl.'s Reply, ECF No. 109 at 11. Ms. Toomer argues that Mr. Dial and Mr. Guercio influenced Mr. White's termination decision, and they were motivated by discriminatory animus in retaliation for Ms. Toomer's EEO complaint against them for the alleged verbal assaults and the alleged physical attack. Pl.'s Mem., ECF No. 106 at 23-24.

In relying on D.C. Circuit case law, this Court rejected Ms. Toomer's "cat's-paw theory" because Ms. Toomer failed to produce any evidence that Mr. Dial and Mr. Guercio were motivated by discriminatory animus when they met with Mr. White as part of the termination process. *Toomer II*, 266 F. Supp. 3d at 204-205. Nothing in the summary judgment record demonstrates that Mr. Dial and Mr. Guercio played a role in Mr. White's final determination because Mr. White "independently and individually" made the decision. *Toomer I*, 2016 WL 9344023, at *10. The Court found that Ms. Toomer failed to present any evidence that would allow a reasonable jury to find that Mr. Dial and Mr. Guercio infected Mr. White's decision-making process on the basis of

animus [2] that is *intended* by the supervisor to cause an adverse employment action, and [3] if that act is a proximate cause of the ultimate employment action, then the employer is liable." *Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011) (footnote omitted).

discriminatory animus or that they intended for Ms. Toomer to be terminated because of the alleged retaliatory incidents. *Toomer II*, 266 F. Supp. 3d at 205. "Because [Ms. Toomer's] case founders on the absence of evidence raising a reasonable inference that [Mr. Dial and Mr. Guercio were] motivated even in part by racial discrimination, [the Court] need not separately analyze the causal factors." *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 297 (D.C. Cir. 2015).

*   *   *

Insofar as a plaintiff may rely upon Rule 60(b)(1) to challenge a prior ruling on the ground that the district court committed "legal error," Ms. Toomer fails to demonstrate that this Court committed "obvious error" in *Toomer II*, or point to a change in controlling law between the time of the July 19, 2017 Final Order and her Rule 60(b) motion. *See, e.g.*, *Muñoz*, 730 F. Supp. 2d at 67; *Bestor*, 539 F. Supp. 2d at 328. Accordingly, the Court **DENIES** Ms. Toomer's motion for relief under Rule 60(b)(1).

### B. Ms. Toomer Is Not Entitled to Relief Under Rule 60(b)(6)

Finally, Ms. Toomer argues that she is entitled to post-judgment relief under Rule 60(b)(6). *See* Pl.'s Mem., ECF No. 106 at 16-17, 24-25. The Secretary argues—and the Court agrees—that Ms. Toomer's "arguments for such relief are not based on any independent grounds, but rather the same alleged errors that

form the basis for her arguments under Rule 60(b)(1)." Def.'s
Opp'n, ECF No. 108 at 10.

Rule 60(b)(6)'s catchall provision permits the Court to
relieve Ms. Toomer from the July 19, 2017 Final Order for "any
other reason" that is not prescribed in the other reasons under
Rule 60(b) only in "extraordinary circumstances." *Cohen v. Bd.
of Trs. of the Univ. of D.C.*, 819 F.3d 476, 485 (D.C. Cir. 2016)
(quoting *Kramer v. Gates*, 481 F.3d 788, 790 (D.C. Cir. 2007)).
Ms. Toomer bears the burden of demonstrating extraordinary
circumstances justifying such relief. *Id*. Ms. Toomer fails to do
so, however.

Ms. Toomer's reliance on the Supreme Court's decision in
*Buck v. Davis*, 137 S. Ct. 759 (2017) is misplaced. *See* Pl.'s
Mem., ECF No. 106 at 16-17, 24-25. In that case, the petitioner—
an African-American man—was convicted of capital murder, and a
Texas jury sentenced him to death after finding that he was
likely to commit future acts of violence under state law. *Buck*,
137 S. Ct. at 767. The jury based its finding on the testimony
of a psychologist that the petitioner's attorney called to the
stand to testify that the petitioner likely would not engage in
violent conduct. *Id*. Although "the psychologist testified that
[the petitioner] probably would not engage in violent conduct,"
the psychologist also testified that: (1) "one of the factors
pertinent in assessing a person's propensity for violence was

32

his race"; and (2) "[the petitioner] was statistically more likely to act violently because he is black." *Id.*

The petitioner eventually filed a federal habeas corpus petition under 28 U.S.C. § 2254. *Id.* at 770. Because the petitioner's ineffective-assistance-of-counsel claim was "procedurally defaulted and unreviewable," under then-governing law, *id.* at 767, the petitioner later sought relief under Rule 60(b)(6) following a change in the governing law that established an excuse for the procedural default, *id.* at 778. The Supreme Court held that relief under Rule 60(b)(6) was available to the petitioner because he established "extraordinary circumstances" for three main reasons. *Id.* First, the petitioner "may have been sentenced to death in part because of his race." *Id.* Next, the petitioner's ineffective-assistance-of-counsel claim was based on race and "injure[d] not just the defendant, but 'the law as an institution, . . . the community at large, and . . . the democratic ideal reflected in the processes of our courts.'" *Id.* (quoting *Rose v. Mitchell*, 443 U.S. 545, 556 (1979)). Finally, "[t]he extraordinary nature of [the] case [was] confirmed by" the refusal of the State of Texas to confess error in the petitioner's case, despite admitting the same error in similar cases and consenting to resentencing. *Id.*

Unlike the petitioner in *Buck*, Ms. Toomer fails to present any facts to support a finding of extraordinary circumstances in

33

this case. Ms. Toomer contends that "[t]he public's confidence in the judicial process is severely undermined" if the Court permits her "to suffer the devastating effects of racial discrimination in the workplace[.]" Pl.'s Mem., ECF No. 106 at 17. Ms. Toomer's argument lacks support in the summary judgment record. *See Toomer II*, 266 F. Supp. 3d at 197, 205-206. Ms. Toomer's disagreement with this Court's prior rulings—that she fails to establish viable retaliation and hostile work environment claims—establishes no basis for relief under Rule 60(b)(6)'s catchall category. Accordingly, the Court **DENIES** Ms. Toomer's motion for relief under Rule 60(b)(6).

## IV.  Conclusion

For the reasons set forth above, the Court **DENIES** Ms. Toomer's Motion for Relief from Judgment. A separate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **May 26, 2020**